# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| George F. Wesman )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>United Parcel Service, Inc. )<br>Defendant. )<br>) | Case No. 08-CV-457 DSD/SRN<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL** |

## INTRODUCTION

Plaintiff George F. Wesman ("Wesman") submits this Memorandum of Law in opposition to the motion to compel brought by Defendant United Parcel Service, Inc. ("UPS"), which seeks (1) to extend Wesman's deposition for an additional six hours, (2) to compel Wesman to quantify his emotional distress damages, and (3) to compel production of allegedly outstanding discovery documents.

The motion should be denied as it is baseless in both fact and law. Had UPS's counsel deferred taking Wesman's deposition until all requested documents had been produced, and/or had she made more efficient use of her time in questioning Wesman, there would be no need to extend Wesman's deposition beyond the 7-hour limit of Fed.R.Civ.P. 30(d)(1); emotional distress damages are a fact issue for the jury and are not disclosable before trial; and all relevant outstanding discovery documents either has been, or will have been, produced prior to the hearing on UPS's motion to compel.

## **RELEVANT FACTS AND PROCEDURAL HISTORY**

This is not a complicated action. There is a single plaintiff, a single defendant, and in essence only two claims, namely; (1) unlawful marital status discrimination in violation of the MHRA, and (2) unlawful reprisal/retaliation in violation of the MHRA and Title VII. Discovery is currently ongoing and is still at a fairly early stage; pursuant to the Amended Pretrial Scheduling Order herein (Docket No. 23), discovery must be completed by June 1, 2009.

On July 18, 2008, UPS served its First Set of Requests for Documents to Wesman, and Wesman's Response, producing 1530 documents, was served September 3, 2008.(Second Affidavit of Konstandinos Nicklow herewith ("2nd Nicklow Aff."), para. 2 and Ex. A). UPS apparently found Wesman's responses deficient; on September 5, 2008, its counsel sent an e-mail to Wesman's counsel requesting production of documents which had allegedly not been produced. (See EI DMTC 83).

Without having received these additional documents, UPS's counsel, Mary E. Stumo ("Ms. Stumo") of the Faegre & Benson law firm, proceeded to take Wesman's deposition, as noticed, on September 19, 2008. (2nd Nicklow Aff.). The deposition lasted for the seven hours prescribed by Fed.R.Civ.P. 30(d)(1) when it was concluded by Wesman's counsel. The transcript is 408 pages long (id., Ex. B, p. 408), reflecting continuous questioning by Ms. Stumo and responses by Wesman, without any significant delays in between.

Ms. Stumo, an experienced employment litigator and head of Faegre & Benson's employment practice (2nd Nicklow Aff., Ex. C), did not use her deposition time efficiently. Rather, Ms. Stumo chose to spend much of the first hour of the deposition questioning Wesman, not on key issues on his two claims, but on marginal issues such as the UPS documents he kept at home (2nd Nicklow Aff., Ex. B attached thereto, pp.14:12-28:5), his resume and its cover letter (pp.28:11-33:13) and his definitions of the words "integrity," "accountability" and "professionalism" included in the cover letter (pp.52:8-57:19).

Ms. Stumo chose to spend time questioning Wesman on his resume although, as she knew, he had already found other employment (see UPS's Memorandum at pp. 5-6, where Wesman's "new job including its compensation and benefits" is listed among the "important topics" about which "Ms. Stumo was unable to adequately question Wesman"). While UPS complains Wesman took four minutes to review his own resume (id., p. 5), Wesman testified the resume (2nd Nicklow Aff., Ex. D) was not his own creation but had been created by a professional service from information provided by him over the phone (2nd Nicklow Aff., Ex. B, pp. 28:24-29:8).

Ms. Stumo did not start questioning Wesman on his marital discrimination claim until the first hour had passed (id., p. 57:16), and very shortly thereafter she interrupted his response to a question about his position on relocation, a topic at the very heart of his claim (id., p. 63:21-23). At that point, Wesman's counsel objected to Ms. Stumo not

3

allowing Wesman to complete his answer; Wesman's counsel advised Ms. Stumo she would be held to the 7-hour rule after Ms. Stumo requested she not be held to a time restriction. (EI DMTC 10, at p. 64:2-17).

UPS admits Ms. Stumo took approximately one hour to examine Wesman on his notes (UPS's Memorandum at p.5) which left her inadequate time to question him on topics such as his damages, emotional distress, mitigation efforts, new job, discovery responses and Rule 26(a) disclosures (id., p. 6). While UPS complains Wesman took approximately seven minutes to review his notes (id., p. 5), the notes, highly relevant to Wesman's claims, comprise four pages of closely typed language, single spaced in a small font (EI DMTC 72-75).[1]

In addition, approximately six minutes of deposition time was used during Ms. Stumo's repeated questioning of Wesman about whether he had told two drivers another employee was a bitch, despite his answer that he did not recall and despite Wesman's counsel's objections that the question had been asked and answered, and request that Ms. Stumo move on to her next question (2nd Nicklow Aff., Ex. B, pp. 243:18-254:11). During the exchange between counsel relating to the repeated questions, which exchange occurred slightly more than halfway through the deposition, Wesman' counsel again pointed out that Ms. Stumo's seven hours would run up sooner if she kept repeating the same question (Id., pp. 244-45).

---

[1] This reference is to the documents submitted by UPS in support of its motion to compel.

All relevant outstanding discovery documents has now been produced to UPS, or will be so produced prior to the motion hearing (2nd Nicklow Aff.).

## ARGUMENT

### I. UPS IS NOT ENTITLED TO ADDITIONAL HOURS FOR WESMAN'S DEPOSITION

#### A. The Failure of UPS's Counsel to Use her Time Efficiently at the Deposition Precludes any Extension of Time for Further Questioning

Fed.R.Civ.P.30(d)(1) provides, as to duration of depositions, as follows:

> Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours. The court must allow additional time consistent with Rule 26(b)(2) **if** needed to fairly examine the deponent or **if** the deponent, another person, or any other circumstance impedes or delays the examination.

(Emphasis added).

Pursuant to the Advisory Committee Note to the 2000 Amendment to Rule 30(d)(1), the party seeking to extend the deposition is expected to show good cause to justify such an order, but UPS has not done so. See Argument II B, infra.

Neither of the contingencies in the Rule 30(d)(1) exist here. Ms. Stumo already had every opportunity to fairly examine Wesman, and he did not impede or delay his examination. Rather, Ms. Stumo did not make efficient use of her time in examining Wesman.

The opinion of the U.S. District Court for the Northern District of Illinois, Eastern Division, in In re Sulfuric Acid Antitrust Litigation, 230 F.R.D. 527 (N.D.Ill. 2005),

5

denying a motion for an additional deposition to decipher handwritten notes, is instructive here:

> **In every deposition, choices have to be made about the subject matter to be covered. The 7-hour rule necessitates, especially in complex cases, that almost all depositions will be under-inclusive. The examiner therefore, must be selective and carefully decide how to apportion her time**. If, as we are now told, the notes were so critical to the case, then other areas of inquiry had to be subordinated to having Mr. Ross interpret his notes-or at least a sampling of them as the plaintiffs now say they will be satisfied with if they are allowed to resume the deposition. The plaintiffs' counsel clearly understood this, as evidenced by her questioning on the morning of the first day of the deposition. She chose not to resume the questioning after the luncheon recess and to put the matter off until 7:34 p.m. the next day, after she had finished her second day of questioning. No one forced her to do so. She made a conscious decision of how to proceed with her own deposition. As the defendant's counsel put it in refusing to allow the deposition, in effect, to continue: "You made the choice as to what to cover, you and your counsel." He was absolutely right, and the plaintiffs are bound by the tactical decisions they made months before the deposition began.

Id. at 532 (emphasis added, footnote omitted).

In a footnote, the Sulfuric Acid court pointed out:

> The decision of what to ask at a deposition is no different than the decision of what to include in a brief in a court of appeals or the Supreme Court. There, one is limited by word count, making it impossible to include every argument one desires and to say as much about each argument at one perhaps would like. The content of a deposition is constrained by temporal limitations, but they are no less constricting.

Id. n. 3.

Accord Canal Barge Co. v. Commonwealth Edison Co., 2001 WL 817853 at *4 (N.D.Ill. 2001) (an authority relied on by UPS) ("the solution to the problem lies in

6

requiring ComEd to make efficient use of its time").

Like the plaintiff's counsel in Sulfuric Acid, Ms. Stumo made her choice on how to question Wesman during her permitted seven hours. After using up the first hour of deposition time before addressing Wesman's claims, she then admittedly used another hour in examining him on his notes. Having spent so much time on the notes, even though relevant to his claims, Ms. Stumo left herself insufficient time to examine Wesman on other issues in the case. Simply put, Ms. Stumo did not apportion her time wisely. However, having made her choice, Ms. Stumo should now be bound by it. As in Sulfuric Acid, no further time should be allowed.

### B.     UPS Shows No Good Cause to Justify Extending the Deposition

None of the facts alleged by UPS as grounds to extend Wesman's deposition has any validity.

#### 1.     Allegations Covering an Extensive Period of Time

UPS cannot allege it needs additional time to inquire into Wesman's allegations of discrimination over a 15-year period, while at the same time UPS has unilaterally chosen to respond to Wesman's discovery only for the period of May 1, 2004 to May 18, 2006, and has taken the position that because allegedly no discriminatory acts occurred within the March 8, 2006 to May 18, 2006 limitations period established by the June 24, 2008 Order of the Honorable David S. Doty (Docket No. 16), UPS is not required to respond to

7

Wesman's discovery requests into UPS's discriminatory acts prior thereto[2]. See Wesman's Motion to Compel Discovery Responses, to be heard contemporaneously herewith.

Discovery, however, is not a one-way proposition. Hickman v. Taylor, 329 U.S. 495, 507 (1947). It is a two-way street. See Hawkins v. Hamlet, Ltd., 2007 WL 1099126 at *3 (S.D.Fla. 2007) (denying plaintiff's motion to compel and motion for protective order because "Plaintiff cannot have it both ways. Plaintiff cannot request that I compel Defendant to respond but require Defendant to stop participating in discovery."). Similarly, UPS cannot have it both ways.

In any event, Ms. Stumo already had the opportunity during Wesman's deposition to question him on his allegations of discrimination, and could have done so had she apportioned her time more wisely. She chose not to do so and should be bound by how she chose to do so and should be bound by how she chose to allocate her time in questioning Wesman. Sulfuric Acid, supra.

### 2. **Numerous Documents**

UPS should not be permitted to allege it needs additional time to inquire into the numerous documents produced by Wesman. Prior to the deposition, Ms. Stumo was already aware that 1530 documents had been produced, and one hour into the deposition she knew Mr. Nicklow was going to hold her to the 7-hour rule. Nevertheless, Ms. Stumo

---

[2] However, Wesman is not barred from using the prior acts as background evidence in support of a timely claim. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002); Judge Doty's Order, p.11, n. 8.

made the conscious choice to use almost one hour in deposing Wesman on his notes, alone, apparently leaving her insufficient time to examine him on other documents or matters pertaining to this case. Had Ms. Stumo used her time more efficiently, and apportioned her time more wisely, she could have covered more documents and subject matters with Wesman. However, this was her choice, and she should be bound by it. Sulfuric Acid, supra.

UPS also refers to additional documents Wesman had not produced prior to his deposition, and which UPS claims it could therefore neither review nor question him thereon. This is not a valid ground on which to extend the deposition since Ms. Stumo was aware at least two weeks prior to the deposition that these documents had not yet been produced. Ms. Stumo could either have waited to take the deposition until she had received and reviewed all relevant requested documents, or alternatively she could have stopped the deposition at a certain point and continued it to a later time after production of the documents.

It was Ms. Stumo's choice to proceed with the deposition before she had the requested documents in hand, and she should be bound by her choice. Sulfuric Acid, supra.

### 3. **Identification of More Than 33 Witnesses**

UPS cannot allege it needs additional time to question Wesman about 33 witnesses identified in his Rule 26(a)(1) disclosures, while at the same time, after UPS itself identified 33 additional employees who were interviewed during UPS's investigations into

Wesman's work history, Ms. Stumo has refused to extend the number of permitted depositions from 10 to 25 to allow Wesman to depose at least some of these individuals. See Wesman's contemporaneous Motion to Modify Amended Scheduling Order.

Discovery is a two-way street and UPS cannot have it both ways. See Argument II B 1 and Hawkins v. Hamlet, Ltd., supra.

Notwithstanding the foregoing, Ms. Stumo already had the opportunity during Wesman's deposition to question him about the witnesses disclosed in his Rule 26(a)(1) disclosures, albeit with only a few questions in respect of each one, and could have done so had she apportioned her time wisely. She chose not to do so and should be bound by her choice. Sulfuric Acid, supra.

### 4. Efforts to Mitigate Damages

UPS suggests that despite the time already spent deposing Wesman, additional time is needed to inquire into his damages claims, efforts to mitigate his damages, and his claim for emotional distress. UPS is wrong. Again, Ms. Stumo had the opportunity to question Wesman on these matters, but she needed to efficiently manage her time in order to do so. The 7-hour limitation obligated her to choose which matters to inquire into, and having made her choice she should be bound by it. Sulfuric Acid, supra.

### 5. Time Spent in Reviewing Documents

UPS points to only two instances where Wesman spent time studying documents before responding to questioning thereon, four minutes to review his resume, a document

10

he had not himself prepared, and approximately seven minutes to review his notes, a closely typed 4-page document. Over the course of a seven hour deposition, the time spent by Wesman reviewing the two subject documents was not unreasonable.

Witnesses are entitled to take such reasonable time as they needed to respond to questions. Miller v. Waseca Medical Center, 205 F.R.D. 537, 541 (D.Minn. 2002) (the only other authority relied on by UPS). Even assuming that the times given are correct -- the transcript does not indicate how long it took to pass the documents to Wesman -- eleven minutes to review important documents, so as to ensure that answers thereon would be correct, is hardly extensive or unreasonable in a seven hour deposition. This is especially true when contrasted with the entire hour taken by Ms. Stumo before she even began addressing Wesman's marital discrimination claim and the six minutes she took in repeatedly questioning him on an issue where he stated he could not recall the answer she wanted. These tactics by Ms. Stumo served to impede Ms. Stumo's attempt to question Wesman as to all matters she now wishes to question him upon far more than the time taken by Wesman in reviewing the subject documents.

As mentioned, UPS gives only two instances where Wesman took time reviewing documents during his deposition. The size of the deposition transcript indicates there were very few, if any, other long pauses in his testimony. Compare the deposition transcript in Jarrar v. Harris, 2008 WL 4384462 (E.D.N.Y. 2008), prepared after just over seven hours of questions and answers, which ran to only 337 pages, id. at *1, with the Wesman

transcript, also prepared after seven hours of questions and answers, which covers more than 400 pages. The approximately 11 minutes taken by Wesman in reviewing his resume and notes are simply insufficient to justify extending his deposition.

### C.  **UPS is Not Entitled to an Extension of the Deposition**

UPS cites to only two case authorities in its entire memorandum, Miller[3], supra, and Canal Barge Co., supra, which UPS offers as examples of cases where an extension to the 7-hour limit has been allowed. However, as the Miller court opined,

> the Court is called upon in each case to make a fact intensive inquiry as to whether a particular witness should or should not be required to submit to questioning which exceeds seven hours in length.

Miller, at 540.

In this case, UPS has not come close to establishing a basis for being allowed to extend Wesman's deposition beyond the 7-hour limitation. Pointing out that Wesman took about 11 minutes to review to documents is insignificant over a period of 7 hours and the fact Wesman had not produced all potential discovery documents is also insufficient as Ms. Stumo knew she had not received all the documents, yet chose to proceed with the deposition anyway.

The factual situations in Miller and Canal Barge Co. were quite different to those in the present case. Miller involved two separate cases, with two separate plaintiffs, which

---

[3] In Miller, Ms. Stumo appeared for one of the defendants on a motion to extend the time to depose two plaintiffs. Id. at 538.

12

were consolidated against the same two defendants. Longer depositions were held appropriate in Miller because the defendants wished to depose each plaintiff, both as to her own case and as to her knowledge of the other plaintiff's case, particularly as their statements had been inconsistent, (Miller, 205 F.R.D.), at 541 because the plaintiffs had elected to offer deposition testimony as an alternative to providing responses in written discovery, (id), and because the plaintiffs took extra time in providing narrative answers to questions where a yes or no answer would have sufficed. (Id.)

In Canal Barge Co., the court found "the factual complexity of discussing repair work performed on 56 barges and the need to refer to numerous accompanying documents" justified extending the time allowed for the deposition of the one witness designate to respond to all questions regarding repair work on the barges in question. 2001 WL 817853 at *4.

No such factual or procedural complexity, as in Canal Barge Co. and Miller, is present here, where Wesman is the sole plaintiff, UPS is the sole defendant, and there are but two claims. One 7-hour deposition would have sufficed had Ms. Stumo chosen her topics and made efficient use of her time. As in Sulfuric Acid, supra, no additional time to take Wesman's deposition should be granted.

Jarrar, supra, is of interest here. In Jarrar, the defendants sought an additional five hours in which to question the plaintiff; but only one additional hour was granted. The Jarrar court's decision to allow the additional hour was based on findings that the

13

defendants' failure to address all the topics on which they wished to question the plaintiff was caused primarily by defendants' insistence on asking many irrelevant and needlessly argumentative questions, and that the plaintiff's counsel was too abrupt in terminating the deposition at almost precisely the 7-hour mark without first giving opposing counsel "fair warning of his intention to stand firm on the 7-hour limit." Id. at **1-2.

Unlike the situation in Jarrar, Ms. Stumo had "fair warning," as early as one hour into Wesman's deposition, that she would be held to the 7-hour time limitation. Nevertheless, despite this initial warning, and Mr. Nicklow's second warning that Ms. Stumo was wasting her 7 hours asking repetitive questions, Ms. Stumo continued to question Wesman in a fashion that left her not time to address the various topics for which she now seeks an extension.

Wesman's counsel's termination of the deposition at the 7-hour mark was not only within the spirit of the Rules, but was within the actual wording of Rule 30(d)(1) ("Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours.").

UPS is not entitled even to the one-hour extension granted in Jarrar, supra.

### D.   UPS Cannot Dictate the Scheduling of any Additional Deposition

UPS asks the Court to schedule any extended deposition not later than March 23, 2009, the stated reason being to enable UPS to provide information on Wesman's damages claims to its experts. However, even if, arguendo, the court sees fit to exercise its discretion and extend the deposition, UPS is not entitled to insist on the date by which any

14

such extended deposition must take place. Had Ms. Stumo used her time efficiently at Wesman's deposition, she could have already examined him on his damages claims and would have had the information in hand since November 2008. Ms. Stumo chose not to do so, and UPS must be bound by her choice. Sulfuric Acid, supra.

## II. THE MOTION TO COMPEL RESPONSES TO OUTSTANDING DISCOVERY REQUESTS SHOULD BE DENIED AS NO RESPONSES ARE OUTSTANDING.

### A. Emotional Distress Damages need not be quantified at this stage

UPS offers no authority to support its argument that it is entitled to a specific damage amount for Wesman's emotional distress damages. Nevertheless, it has been consistently held that the amount of emotional distress damages is a matter for the fact finder at trial, and need not been quantified in Rule 26 Disclosures. See, e.g., Williams v. Trader Pub. Co., 218 F.3d 481, 486, n.3 (5th Cir. 2000) ("Since compensatory damages for emotional distress are necessarily vague and are generally considered a fact issue for the jury, they may not be amenable to the kind of calculation disclosure contemplated by Rule 26(a)(1)(C)."); Creswell v. HCAL Corp., 2007 WL 628036, *2 (S.D.Cal. 2007) ("While Rule 26 generally requires a party to provide a computation of such damages, emotional damages, because of their vague and unspecific nature, are oftentimes not readily amenable to computation.... Thus, Plaintiff's failure to provide a computation of his emotional damages is excused and Plaintiff is permitted to seek such damages at trial"); Burrel v. Crown Central Petroleum, Inc., 177 F.R.D. 376, 386 (E.D.Tex.1997)

15

(compensatory damages attributable to mental anguish to be determined by trier of fact and no computation thereof required under Rule 26(a)(1)( C)); Santos v. Farmers Ins. Exchange, 2008 WL 2937778 at *2 (E.D.Mich. 2008) ("Plaintiffs primarily seek non-economic damages based on pain and suffering, which are generally not amenable to the type of disclosures contemplated by Rule 26(a)(1)(A)(iii)"); Estate of Gonzalez v. Hickman, 2007 WL 3237635, at *4 (C.D.Cal. 2007) (same, collecting cases); Crocker v. Sky View Christian Academy, 2009 WL 77456 at *2 (D.Nev. 2009) (" because emotional suffering is personal and difficult to quantify, damages for emotional anguish likely will be established predominantly through the plaintiffs' testimony concerning the emotional suffering they experienced, not through they type of documentary evidence or expert opinion relied upon to make a Rule 26(a)(1)(A)(iii) disclosure of a computation of damages. . . Plaintiffs did not err in failing to provide a computation of their alleged emotional damages.").

Based on this weight of authority, UPS's motion to compel Wesman to disclose the amount of his emotional distress damages must be denied.

### B. Wesman has produced all relevant tax information

All relevant tax information which may have been inadvertently omitted from Wesman's production has now been produced to UPS. (See 2nd Nicklow Aff.).

Without citing to any authority, UPS asserts it is also entitled production of Wesman's "personal investment records, and Mrs. Wesman's tax records for the relevant

16

time period." (UPS's Memorandum at p. 18). UPS is wrong. Neither Wesman's personal investment records, nor Mrs. Wesman's tax records, is relevant to Wesman's claim for lost wages and benefits and he should not be required to produce them.

As to Wesman's personal investment records, see Besicorp Group Inc. v. Enowitz, 268 A.D.2d 846, 849, 702 N.Y.S.2d 421, 424 (N.Y.A.D. 3 Dept. 2000) (former CEO's personal investment and financial records, among other personal information, held highly confidential and not sufficiently relevant to be discoverable by corporation in action seeking declaration that he was not permanently disabled at time of his resignation); John C. Flood of Virginia, Inc. v. John C. Flood, Inc., 2008 WL 281066 at *3 (D.D.C. 2008) (in action concerning use of trade name, "[t]he requests for individual tax returns would encompass irrelevant information such as personal investments, mortgage payments, and charitable contributions.").

Ms. Wesman is not a party to this action, and her tax returns are irrelevant, even if returns were filed jointly. See the opinion of the US District Court for the Northern District of New York in Gates v. Wilkinson, 2005 WL 758793 (N.D.N.Y. 2005):

> Tax returns of any party will inevitably contain information which is not relevant to the pending action, including Social Security numbers, the identities of dependents, adjustments, credits, deductions, and the like. Moreover, such returns may well have been filed jointly with a spouse and **no spouse appears to be a party to this action. Any information in a tax return concerning a spouse implicates the privacy interests of a nonparty and would appear irrelevant in this case**. Thus, if any party renews his request for production of tax returns, such request should be specific as to which portions of the tax returns are sought so that, if necessary, appropriate redaction can be ordered.

17

Id. at *3, n.3 (emphasis added).

The same is true in the instant case.

All other requested information has now been produced, or will have been produced as of the time of the hearing, and UPS's motion in this regard should be denied as moot.

## CONCLUSION

UPS's motion to compel should denied in all respects.

Respectfully submitted,

MESHBESHER & SPENCE, LTD.

Dated: March 6, 2009.

s/Konstandinos Nicklow
Attorney #225526
1616 Park Avenue
Minneapolis, MN 55404
(612) 339-9121
ATTORNEYS FOR PLAINTIFF